UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK
-------------------------------------------------------------------X
JEFF SCOTT,

                Plaintiff,

  - against -

BK BEASTS LLC
d/b/a CROSSFIT OUTBREAK,

                Defendant.
-------------------------------------------------------------------X

**MEMORANDUM AND ORDER**
17-CV-699 (RRM) (PK)

ROSLYNN R. MAUSKOPF, United States District Judge.

On February 8, 2017, plaintiff Jeff Scott brought this action pursuant to the Fair Labor Standards Act (the "FLSA"), 29 U.S.C. § 201 *et seq.*, and the New York Labor Law (the "NYLL"), N.Y. Lab. Law § 250 *et seq.* Scott alleges that, between October 2015 and October 2016, his former employer, defendant BK Beasts, mischaracterized him as an independent contractor, and failed to pay Scott the wages he was promised or to even pay him a minimum wage. (Compl. (Doc. No. 1.) at 1, 3–4.)[1] On March 10, 2017, Scott filed a letter, notifying the Court that the parties had reached a settlement. (Settlement Letter (Doc. No. 6).) The parties had agreed to the terms of the settlement prior to filing suit, and now ask the Court to approve the settlement "as fair and reasonable" pursuant to *Cheeks v. Freeport Pancake House, Inc.*, 796 F.3d 199 (2d Cir. 2015).

The proposed settlement in this case requires BK Beasts to pay a total of $6,450. (Proposed Settlement (Doc. No. 6-1) at 3.) Of that amount, Scott will receive $4,000, and his attorneys will receive $2,450. (*Id.* at 4.) Scott's counsel submitted their attorney billing records,

---

[1] For ease of reference, all citations to Court documents use Electronic Case Filing ("ECF") pagination.

which show that they spent a total of 41.4 hours on the matter. (Billing Statement (Doc. No. 7) at 2.) For the reasons set forth below, the parties' settlement is approved.

## DISCUSSION

To promote the FLSA's goal of "prevent[ing] abuses by unscrupulous employers, and remedy[ing] the disparate bargaining power between employers and employees," the district court or the Department of Labor must first approve a settlement in an FLSA case. *Cheeks*, 796 F.3d at 207. Accordingly, the Court cannot dismiss the complaint until it finds that the terms of the settlement are "fair and reasonable." *Flores v. Food Express Rego Park, Inc.*, No. 15-CV-1410 (KAM) (SMG), 2016 WL 386042, at *1 (E.D.N.Y. Feb. 1, 2016). A "fair and reasonable" settlement "reflects a reasonable compromise of disputed issues rather than a mere waiver of statutory rights brought about by an employer's overreaching." *Le v. SITA Networking Computing USA, Inc.*, No. 07-CV-86 (JS) (MLO), 2008 WL 724155, at *1 (E.D.N.Y. Mar. 13, 2008) (internal quotation marks and citation omitted).

### I. Settlement Amount

Scott estimates that BK Beasts owes him $3,385 in back wages, plus an additional $3,385 in liquidated damages, for a total of $6,770. (Settlement Letter at 2.) Under the terms of the proposed settlement, Scott will receive $4,000. (Proposed Settlement at 4.) To determine whether that award is "fair and reasonable," the Court considers a host of factors, including: (1) the plaintiff's range of possible discovery; (2) the extent to which the settlement will enable the parties to avoid anticipated burdens and expenses in establishing their respective claims and defenses; (3) the seriousness of the litigation risks faced by the parties; (4) whether the settlement is the product of arm's length bargaining between experienced counsel; and (5) the possibility of fraud and collusion. *Wolinsky v. Scholastic Inc.*, 900 F. Supp. 2d 332, 335

(S.D.N.Y. 2012); *see also Lopez v. 41-06 Bell Blvd. Bakery LLC*, No. 15-CV-6953 (SJ) (PK), 2016 WL 6208481, at *1 (E.D.N.Y. Oct. 3, 2016) (applying the *Wolinsky* factors to determine whether an FLSA settlement is fair and reasonable).

The litigation risks and costs associated with proving Scott's claim – that he was an employee rather than an independent contractor, and that BK Beasts failed to adequately pay him – could have been significant. Furthermore, the proposed settlement provides Scott with the full amount of back pay allegedly owed. Accordingly, the Court finds that the settlement amount is fair and reasonable.

## II. Attorney's Fees

Under the proposed settlement, Scott's lawyers receive $2,450 from BK Beasts. (Proposed Settlement at 4.) Courts calculate reasonable attorney's fees by looking to the "lodestar" amount. *See McDaniel v. Cnty. Of Schenectady*, 595 F.3d 411, 417 (2d Cir. 2010). The Court determines the lodestar figure by multiplying the number of hours reasonably spent on a case by a reasonable hourly rate. *See Millea v. Metro-N. R. Co.*, 658 F.3d 154, 166 (2d Cir. 2011). Courts may "cross check" the lodestar method on the percentage method. *Goldberger v. Integrated Resources, Inc.*, 209 F.3d 43, 50 (2d Cir. 2000). Under this latter method, counsel receives a reasonable percentage of the total funds. *McDaniel*, 595 F.3d at 414.

In this case, the proposed settlement provides that Scott's attorneys receive $2,450 out of the total $6,450, or 38% of the total settlement fund. (Proposed Settlement at 4.) This percentage is slightly over what is typical in this Circuit. *See Karic v. Major Automotive Companies, Inc.*, No. 09-CV-5708 (CLP), 2016 WL 1745037, at *8 (E.D.N.Y. Apr. 27, 2016) (collecting cases) ("Courts in this Circuit have often approved requests for attorney's fees amounting to 33.3% of a settlement fund.")

However, the lodestar method shows that the attorney's fees in the proposed settlement are reasonable. *See Frank v. Eastman Kodak Co.*, 228 F.R.D. 174, 189 (W.D.N.Y. 2005) (using the lodestar method to justify attorney's fees constituting 40% of the settlement fund). "Recent decisions in the Eastern District of New York have determined that reasonable hourly rates in FLSA cases are approximately $300–$450 for partners, $200–$325 for senior associates, $100–$200 for junior associates, and $60–$80 for legal support staff." *Romero v. Westbury Jeep Chrysler Dodge, Inc.*, No. 15-CV-4145 (ADS) (SIL), 2016 WL 1369389, at *2 (E.D.N.Y. Apr. 6, 2016). Here, Scott's counsel billed a total of 41.4 hours at various hourly rates for a total lodestar amount of $7,870.00. (Billing Statement at 1–2.)[2] The attorney's fees provided for in the proposed settlement – $2,450.00 – therefore fall below the lodestar amount even without applying any lodestar multiplier. *See Goldberger*, 209 F.3d at 47 ("[T]he district court may, in its discretion, increase the lodestar by applying a multiplier based on other less objective factors, such as the risk of the litigation and the performance of the attorneys.") (internal quotation marks and citation omitted.) Scott's attorneys' request for attorney's fees and costs is therefore reasonable.

The number of hours billed is also reasonable. Courts have reduced attorney's fees where billing statements include vague time entries, unnecessary or redundant tasks, or block-billing. *See, e.g., Marshall v. Deutsche Post DHL*, No. 13-CV-1471 (RJD) (JO), 2015 WL 5560541, at *11 (E.D.N.Y. Sept. 21, 2015) (reducing attorney's fees where time entries were vague, and where the partners' time entries revealed that they spent the bulk of their time

---

[2] Some of the rates charged appear to be above what is typical in this District. For example, Alec Imel, who graduated from law school only two years ago, charges $250. $100–$200 would be more typical. However, even adjusting the attorneys' and legal support staffs' salary to the bottom of the range of average rates in this District yields a lodestar amount of $3,980. This is still far more than what the attorneys actually recover under the Settlement.

4

"reviewing the work of other attorneys and conferring with each other"); *Sheet Metal Workers' Nat. Pension Fund v. Coverex Corp. Risk Sols.*, No. 09-CV-0121 (SJF) (ARL), 2015 WL 3444896, at *12 (E.D.N.Y. May 28, 2015) ("[B]lock-billing makes it difficult if not impossible for a court to determine the reasonableness of the time spent on each of the individual services or tasks provided.") (internal quotation marks and citations omitted); *Flores*, 2016 WL 386042, at *3 (reducing the attorney's fees in light of the "not-insubstantial amount of travel time" billed).

In this case, Scott's counsel submitted sufficiently detailed billing entries for the Court to determine that the majority of time spent on the case was devoted to substantive tasks, such as speaking with defense counsel to reach a settlement agreement, drafting and revising the proposed settlement and complaint, and communicating with the client. (*See* Doc. No. 7-1.) The Court finds that the number of hours spent on the matter is reasonable, and that the attorney's fees provided for in the proposed settlement are less than the lodestar amount. The attorney's fees are therefore fair and reasonable.

### III. Release

The proposed settlement requires that Scott release BK Beasts from certain claims. (Proposed Settlement at 3.) The Court must ensure that the defendant is not using "the FLSA claim . . . to leverage a release from liability unconnected to the FLSA." *Camacho v. ESS-A-Bagel, Inc.*, No. 14-CV-2592 (LAK), 2014 WL 6985633, at *4 (S.D.N.Y. Dec. 11, 2014). Courts have rejected releases where the plaintiff would have to "waive practically any possible claim against the defendants, including unknown claims and claims that have no relationship whatsoever to wage-and-hour issues." *Cheeks*, 796 F.3d at 206 (internal quotation marks and citation omitted). However, FLSA settlement releases "may include claims not presented and even those which could not have been presented, but only when the released conduct arises out

5

of the identical factual predicate as the settled conduct." *Lopez v. Nights of Cabiria, LLC*, 96 F. Supp. 3d 170, 181 (S.D.N.Y. Mar. 30, 2015) (internal quotation marks omitted).

The proposed settlement in this case requires Scott to release BK Beasts

> "from any and all claims and causes of action, known or unknown, that arise out of the allegations in the Lawsuit or any other actions at all related to the claims asserted in the Lawsuit including but not limited to any claims based on putative violations of a federal (Fair Labor Standards Act) state, or local law pertaining to hours of work of payment of wages while employed by Defendants."

(Proposed Settlement at 3.) The release includes broad language that precludes Scott from bringing certain claims, "including but not limited to" a host of federal and state labor laws. Though far-reaching, the proposed settlement cabins the release to claims that either arise out of the allegations or relate to the ones asserted in the present suit. Therefore, it does not release defendant from "practically all claims," but rather only prevents Scott from relitigating matters that are either related to or arise out of the instant case. *Bares v. Valente Landscaping Inc.*, No. 14-CV-1434 (SIL), 2016 WL 4991595, at *3 (E.D.N.Y. Sept. 15, 2016). Accordingly, the release clause is fair and reasonable.

### IV. Confidentiality

The proposed settlement contains a confidentiality provision which states: "To the extent permitted under *Fujiwara v. Sushi Yasuda Ltd.* . . . and any other relevant statute or case, Plaintiff's counsel agrees not to publicize this Agreement." (Proposed Settlement at 5.)

Though the FLSA imposes no bar on confidentiality provisions, highly restrictive ones are at odds with the FLSA's remedial purpose. *See Cheeks*, 796 F.3d at 206; *see also Nights of Cabiria*, 96 F. Supp. at 178 (rejecting a confidentiality provision that barred "the plaintiffs from speaking about their experience" because such a condition would "thwart Congress's intent to ensure widespread compliance with the statute . . . by silencing the employee who has vindicated a disputed FLSA right.") (internal quotation marks, alterations, and citation omitted). In

*Fujiwara v. Sushi Yasuda Ltd.*, 58 F. Supp. 3d 424 (S.D.N.Y. 2014), the court approved a class settlement, but reduced the requested attorney's fees, and denied service awards for class representatives. Relevant for the proposed settlement in this case, the court held that "[c]lass counsel may agree to not publicize the settlement, but Plaintiffs and class members cannot be required to keep silent." *Id.* at 434.

The confidentiality provision in this case, though, does not run afoul of these public policy concerns. Specifically, the limitation only restricts Scott's counsel, not Scott himself, from publicizing the settlement. (Proposed Settlement at 5–6.) Under the terms of the confidentiality provision, Scott remains free to discuss the terms of and circumstances surrounding the settlement. Because the confidentiality provision is not so restrictive as to "prevent the spread of information about FLSA actions to other workers," the Court finds that it is fair and reasonable. *Zapata v. Bedoya*, No. 14-CV-4114 (SIL), 2016 WL 4991594, at *2 (E.D.N.Y. Sept. 13, 2016) (internal quotation marks and citations omitted).

## CONCLUSION

For the reasons stated above, the Court finds that the settlement is fair and reasonable.

SO ORDERED.

Dated: Brooklyn, New York
May 3 2018

s/Roslynn R. Mauskopf
_____
ROSLYNN R. MAUSKOPF
United States District Judge

7